IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES GILLS,<br><br>Defendant. | CRIMINAL NO. JKB-23-332 |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by undersigned counsel, submits its sentencing memorandum in advance of the sentencing hearing in the above-captioned matter, currently scheduled for Wednesday, August 27, 2025, at 10:00 a.m. James Gills ("Defendant") pled guilty to Count One of the Indictment in this case (ECF No. 1), charging him with possession of ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). As set forth more fully below, the Government requests that the Court sentence the Defendant to 84 months of incarceration to the Bureau of Prisons ("BOP").

## SENTENCING GUIDELINES

The Presentence Investigation Report ("PSR") found the Defendant's base offense level to be 24 based on United States Sentencing Guidelines ("USSG") § 2K2.1(a)(2). The PSR accurately reflects a criminal history category of VI based on sixteen points. Additionally, the Defendant accepted responsibility for his misconduct and accordingly the Government does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to USSG § 3E1.1(a). The Government also anticipates making a motion at sentencing pursuant to USSG § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's

˜1˜

intention to enter a plea of guilty. Therefore, the PSR found the adjusted offense level to be 21. The applicable guideline range for this offense level and criminal history category is 77 to 96 months. As discussed below, a sentence of 84 months, which is in the middle of his guidelines range, is appropriate under the factors set forth in 18 U.S.C. § 3553(a).

## FACTORS SET FORTH IN 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), a sentencing court "shall impose a sentence sufficient, but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). The sentencing court should consider various factors, including (among other things)[1]:

- the nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. §3553(a)(1));

- the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; "to protect the public from further crimes of the defendant"; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" (18 U.S.C. § 3553(a)(2));

- the applicable guidelines level ((18 U.S.C. § 3553(a)(4)); and

- the need to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (18 U.S.C. § 3553(a)(6)).

In this case, the § 3553(a) factors favor a sentence of 48 months of imprisonment. The

---

1   The Government has not copied the entirety of § 3553(a) into this memorandum. The portions of the statute cited herein are the portions most relevant to this sentencing.

Government will address certain factors in the following sections.

    **A.    Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense (18 U.S.C. § 3553(a)(1), (a)(2)(A)).**

The crime is very serious. The Defendant lead officers on a car and foot chase through East Baltimore while armed with a loaded untraceable privately made firearm, commonly referred to as a "ghost gun." The Defendant was observed holding the gun in his right hand while running from police. He eventually threw the loaded gun up into the air, where it fell to the ground and was immediately recovered by police.

The Defendant will likely argue that the offense is "non-violent." That is true, in a technical, categorical sense. And the fact that the Defendant did not injure any civilians, or himself, or the arresting officers while running in a densely populated residential area with a loaded gun in his hand, is a factor in his favor. At the same time, however, writing off the Defendant's crime as "non-violent" is reductive and ignores much of the crime's substance. The crime was violent in the sense that carrying a loaded ghost gun in your hands while fleeing from police could have resulted in people being hurt or killed. Not to mention the act of tossing the loaded polymer constructed weapon into the air—where it could have gone off as soon as it hit the pavement below it—injuring or killing innocent civilians or the officers.

Sometimes crimes like this one are incorrectly referred to as "victimless." The reality is that there *were* victims in this case. The residents of Baltimore are victims who disproportionately suffer from gun violence and no doubt are tired of armed violent felons perpetuating this problem. The sentence should take into consideration the impact on those individuals and communities. We should be mindful of the experience of families impacted by gun violence and by the cost inflicted

on communities due to illegal gun trafficking, particularly privately made firearms.

This is a case about the Defendant's choices. This is not a case about something that happened *to* the Defendant. This is not a "situation" in which he found himself or some unavoidable event in which he was trapped. This is not about the loss of his friend or his wife in recent years. The Defendant made choices that led to him being in federal court. He made the conscious decision to illegally carry a loaded ghost gun in Baltimore city. The Defendant's choices made this case. The sentence should reflect those choices.

Although the Defendant has taken responsibility for his actions, there is no doubt that his conduct was obviously dangerous. The Defendant exposed himself and the community to great harm. Accordingly, a total sentence of 84 months imprisonment is warranted and sufficient. The Government's recommendation would serve several § 3553(a) factors. It would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. 18 U.S.C. § 3553(a)(2).

**B.      The History and Characteristics of the Offender (18 U.S.C. § 3553(a)(1))**

The Defendant's criminal history prior to the instant offense paints a dangerous and discouraging picture. The Defendant's sentencing memorandum aims to portray him as sympathetic victim of his "cruel East Baltimore neighborhood." ECF 53 at 1. The Government strongly disagrees. The unfortunate reality is that the Defendant is a violent and dangerous career criminal that has added to the cruelty of the neighborhood he has terrorized his entire life.

From the age of sixteen, the Defendant has been involved in the criminal system. From the age of sixteen until he was arrested in the instant case, the Defendant has been arrested 35 times (<u>not</u> including his arrest in this case). Alarmingly, approximately 13 of those arrests were for

violent offenses. From the armed robbery at the age of sixteen to the seven separate arrests for assault in the second degree to the first degree assault to the two separate home invasions (both of which involved the use of a firearm) – there is no doubt that the Defendant is no stranger to violent acts against others. What gives the Government the most pause is the fact that most of the above events involved female victims—many of which were either current or former intimate partners.

When the Defendant was arrested in the instant case on May 4, 2023, he was served with two other outstanding arrest warrants—each for separate home invasions involving a firearm at the residence of two separate female intimate partners. When he was brought before the commissioner for a bail determination, the Baltimore City State's Attorney's Office provided their standard "State's Recommendation for Conditions of Release" which outlines the facts of the cases for which the Defendant is being charged with as well as a summary of the Defendant's criminal history. Within that criminal history, the ASA who prepared it noted the name of each victim for the prior victim related cases. Each assault case involved a female victim. *See* Exhibit 1. Most frightening to the Government are the facts behind the 2013 attempted fourth degree burglary conviction, the 2020 first degree assault arrest, as well as the two separate home invasions that took place in 2022 and 2023. All of these incidents contained allegations of the Defendant possessing a firearm.

The facts of the 2013 attempted fourth degree burglary conviction are recited in the Pre-Sentence Report on page 10. It is important to note that the case was originally charged with stalking, harassment, and assault second degree in addition to the burglary charges. In this case, the victim reported that the Defendant had followed her to her car on several prior occasions and made threats to shoot her. On August 30, 2013, the victim reported that the Defendant showed up

at her residence and attempted to gain access to her home. When he was unsuccessful, he stood on her front porch shouting through her windows, "Snitch bitch, you're dead. I'm going to shoot you." *Id*. Police arrived and made observations that the victim was visibly shaking, was afraid for her life, and had seen the Defendant with a gun before. The victim's "caretaker" witnessed this event and also expressed a fear for his life. The Defendant was later seen by police coming from the victim's yard and was arrested. The Defendant was found guilty of attempted fourth degree burglary in October 2013.

Unfortunately, this conviction did nothing to deter the Defendant from continuing to engage in violent behavior involving female victims. In November 2020, the Defendant was charged with first degree assault against his child's mother as well as her mother. His child's grandmother called the police to report that the Defendant and her daughter were having an argument. When her daughter told the Defendant to leave the residence, he retrieved a firearm from his waistband, placed his hand on the trigger and stated, "I ain't going nowhere, I'll kill everyone in here." *See* Exhibit 2. At this time, the Defendant was advised that they were calling the police and he fled from the location. *Id*. After speaking with a representative from the Baltimore City State's Attorney's Office, I was advised that the case had to be dismissed when the victims refused to participate in the prosecution.

Similarly, in 2022 and 2023 – the Defendant was charged with two separate home invasions. *See* Exhibits 3 and 4. In December 2022, the Defendant's ex-girlfriend reported that she was asleep when she heard loud banging noises outside of her front door. Shortly thereafter, the Defendant and another male kicked in the front door. The victim reported that the Defendant hit her in the face with the handgun demanding to know if she had another male in the house with her.

The police responded and observed damage to the front door. After speaking with a representative from the Baltimore City State's Attorney's Office, I was advised that the case had to be dismissed when the victim refused to participate in the prosecution.

In March 2023, approximately one month before the instant offense, police were dispatched to the residence of Ms. Franscola Rice located at 1606 E. Eager Street in Baltimore. She stated that she was the Defendant's ex-girlfriend[2]. The details from this instance are alarmingly similar to the 2022 home invasion charge involving a separate ex-girlfriend. In this instance, the victim also reports that she was sleeping when the Defendant kicked in her back door. She ran to her daughter's room and told her to call 911. The victim reports that she went downstairs to confront the Defendant and ask why he was there. Similar to prior instances involving separate female victims, the Defendant stated that he was going to kill her and demanded to know if she had another man in the house. The Defendant then began to strike the victim repeatedly on her head and body. The victim reported that when she was able to get the Defendant out the back door and attempt to lock the door, he again forced his way inside, grabbed her by her hair and dragged her out the back door continuing to assault her. The victim reported that she could see the handle of a firearm on the Defendant's person while he was assaulting her. When the Defendant heard the police were called, he fled. Police report observing visible injuries on the victim's face, hands, and knees. The back door was also kicked in with visible damage to the door and to the locks. While police were present, the Defendant called the victim and she placed the call on speakerphone. The Defendant could be heard saying, "they better move you, they better move you, because I'm going

---

[2] It should be noted that in this March 2023 police report, Ms. Franscola Rice indicates that she is the Defendant's ex-girlfriend. However, the Pre-Sentence Investigation report as well as the Defense Sentencing Memo states that the Defendant reports that they have been in a relationship for almost five years.

to kill you." This phone call and the Defendant's statement were both recorded on police body worn camera. *See* Exhibit 4. After speaking with a representative from the Baltimore City State's Attorney's Office, I was advised that the case had to be dismissed when the victim refused to participate in the prosecution, stating that she was pregnant[3] with the Defendant's child and did not want her child's father in jail.

The Defendant has been convicted 12 times – including this case. Despite what his sentencing memo aims to portray, being involved in crime is not a recent occurrence as a result of the tragic loss of his wife or his friend. His past shows that he is no newcomer to drugs or violence. In short, during the more than two decades preceding the offense, the Defendant was engaged in a stream of illegal activity. As the instant case demonstrates, the Defendant's path was still heading in that direction. Fortunately for him, and for others in the community, police intervened before he was able to make good on the many threats he's made to kill others.

Over the last 20 years, the Defendant has been arrested nine times for offenses involving firearms—he has been convicted twice for firearms charges. He has been convicted eight times during that span for narcotics offenses.

The Defendant's prior record mentioned thus far is horrible, but just as concerning is his inability to obey the law while under supervision after incarceration. The Pre-Sentence Report shows thirteen prior violations of probation. The Defendant's performance on community supervision has been abysmal to say the least.

Clearly the Defendant's past reflects one of a recidivist nature and a particularly violent

---

[3] This pregnancy is corroborated by the Defendant's statement in the Pre-Sentence Report that Ms. Franscola Rice was pregnant with his child but had a miscarriage. The Government has been unable to definitively confirm whether she was pregnant at the time of this assault or when the reported miscarriage occurred.

one at that, unchallenged by any prior period of incarceration or supervision. As such, the sentence imposed in this case should reflect the Defendant's resistance to adapt to being a law-abiding citizen. Taking into consideration the Defendant's background, a sentence of 84 months is necessary, rather than the Defendant's recommendation of 60 months.

First, a 60-month sentence would place too much emphasis on one or two § 3553(a) factors. The Defendant will likely focus on any improvements while incarcerated, the loss of two loved ones, his children, growing up with a single mother in a rough neighborhood, struggles with mental health and substance abuse, and on the unsupported assertion that he will not engage in criminal conduct in the future. However, those are not the only factors at issue here. The Defendant's recommendation does not reflect the seriousness of the offense, his extremely violent record involving the use of firearms, the need to send a reasonable message of general deterrence, the need to promote respect for the law, to provide just punishment, or the need to avoid unwarranted disparities with similarly situated defendants.

Second, even focusing on those § 3553(a) factors, there are aspects of the Defendant's history and characteristics that clearly reflect a need to further protect the community. The facts of this case and the Defendant's criminal history are matters of grave concern in that regard. The Defendant's criminal record during the years preceding the instant offense suggest the need for a substantial sentence.

    **C.**    **The Purposes of Sentencing Including the Need to Send a Reasonable Message of General Deterrence (18 U.S.C. § 3553(a)(2)).**

The Defendant's recommended sentence would not send an appropriate message to other potential offenders. Such a sentence would be invariably cited by other defendants seeking

minimal punishment based on post-offense rehabilitation. For good or ill, it has become a common aspect of sentencing in this District for defendants to cite to individual other cases (in sentencing contexts and in compassionate release contexts) in support of comparatively lower sentences. To some degree, every sentencing has become a measuring stick for every other sentencing despite the fact that every case is different. When the Government is seen as acceding to or not opposing sentences that do not send a reasonable message of general deterrence, the perceived precedential value becomes even stronger. In this respect, a 60-month sentence will send a message to other offenders as a measure of what is appropriate punishment. A lower sentence fails to accomplish that goal. The facts of this case and the Defendant's violent record support the Government's recommendation.

## CONCLUSION

This is the Defendant's twelfth conviction in which the Government is aware. He has sixteen criminal history points. He is not a victim of his "cruel neighborhood" as the Defendant suggests. The Defendant has been a major contributing factor to the cruelty and violence that plagues Baltimore city neighborhoods and the law-abiding citizens that live in those neighborhoods. It shocks the conscience the Defendant could read the same Pre-Sentence Report that the Government read and even suggest that this Defendant was carrying a gun for "self protection" because he was in fear following the shooting of his friend. The Defendant, even at 36 years of age when he committed this crime, has failed to change his ways. No prior term of incarceration or period of parole or probation has changed the path of the Defendant. A sentence of 84 months of incarceration to the BOP is sufficient, but not greater than necessary to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a).

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By: _____
Sarah Simpkins
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2025, a copy of the foregoing was sent by ECF service to Andrew Szekely, Esq. and Christina Wong, Esq., counsel for the Defendant.

_____
Sarah Simpkins
Assistant United States Attorney